## Poledor et al. *v.* Mayerfield et al.

[No. 13,835. Filed November 18, 1930. Rehearing denied May 7, 1931. Transfer denied July 1, 1932.]

*Graham, Crane & Elliott and Seebirt, Oare, Deahl & Omacht,* for appellants.

*W. S. Carlisle, Claude D. Carson, Parker, Crabill, Crumpacker & May, Louis Hammerschmidt,* for appellees.

LOCKYEAR, J.—Appellants were the owners of certain real estate in South Bend, Indiana, located at 125 South Michigan Street in said city, upon which real estate was located a store building. The appellee, Mayerfield, was the owner of an unexpired leasehold under a written lease for a term of 25 years, which lease had been previously assigned to him by an original lessee.

The lease provided that in case the premises should be rendered unfit for occupancy, by reason of fire or other casualty, the appellant would at once, or as soon thereafter as the same could be done, rebuild or repair such portion of said building at appellant's expense and that the rent on said premises should be rebated during such period as the said premises might be so unfit for occupancy.

On April 20, 1920, the appellee, Mayerfield, sublet said premises by instrument in writing to the appellee, Paul C. Kuehn, for a term of years from August 1, 1921, until December 30, 1930. The original lease was executed in 1905, at which time there was no building code ordinance in the city of South Bend. In the year 1922, the Common Council of said city enacted an ordinance known as the "Building Code" which zoned the city into fireproof limits, and regulated the type and kind of buildings therein. The ordinance requires a permit to be obtained from the building commissioner before erecting, constructing, or repairing any buildings and prohibits the repairing of any existing buildings damaged more than 60% by fire and other causes, within the fire limits. The building in question was in the fireproof limits as defined by the ordinance, and was not of fireproof construction.

On the first day of February, 1926, the building was damaged by fire. The result of the fire culminated in this action. The appellee, Adolph R. Mayerfield, filed a complaint against the appellants to recover damages for breach of the lease and eviction.

The complaint is in the usual form. The lease is set out in full and contains the covenant to rebuild or repair as above set out. It alleges that on March 27th, 1926, appellants proceeded to tear down the said building on said premises leased to this plaintiff, and to render the same untenantable and to eject and oust this plaintiff from said premises and the subtenants of this plaintiff and to oust this plaintiff and his subtenants from their and each of their rights and interests in and to said premises, as tenants, and following up their said design of destroying said building by total destruction and demolition thereof, and erected in the place and stead of said building a new three story and basement store building wholly without right and over the protests of this plaintiff. That appellants have rented said real estate to another and third party, thereby completely ousting this plaintiff from the possession of said premises and destroying his right to the possession and his interests therein. Wherefore plaintiff demands judgment against said defendants in the sum of $40,000.

Appellee, Paul C. Kuehn, intervened and filed a cross-complaint in which he alleges that he was in possession of the premises in question under a sublease from appellee, Mayerfield; that the said Poledors have, since the first day of February, 1926, failed and refused to carry out the terms of said lease and sublease in this that they failed and refused to repair and rebuild the buildings on said premises after a fire which occurred on the 1st day of February, 1926, and which fire partially destroyed the buildings occupied by cross-complainant in his business and in which the same was con-

ducted at said premises; that they razed and removed all the buildings from said premises after said fire and thereafter built a new structure which has been finished and suitable for occupancy since the — day of ———, 1926, but that on the 26th day of March, 1926, and at all times since said date, they have entered upon said premises and unlawfully detained the possession thereof from this cross-complainant to his damage in the sum of $26,000, for which the said Kuehn demanded judgment.

The appellants filed separate answers in general denial to the complaint and the cross-complaint, and also severally filed a second paragraph of answer to the same wherein it is alleged in substance that on March 27th, 1922, the common council of the city of South Bend, duly and legally enacted an ordinance, being ordinance No. 2243, known and designated as the Building Code of the city of South Bend, Indiana, which ordinance regulated and regulates all matters concerning or pertaining to the construction, alteration, repair or additions to, remodeling, use or occupancy of buildings or their parts, and structures of every nature in the city of South Bend, Indiana, providing for the condemnation and stoppage of the use thereof, and regulating the same, creating the offices of Building Commissioner, Assistant Building Commissioner, City Electrician and providing for the office of Building Department, repealing all former ordinances conflicting therewith.

That Section 23 of said code provided among other things: "Before proceeding with the erection, construction, remodeling, alteration, repair and removal of any building or other structure, or the heating apparatus, electrical wiring, elevators, signs or bill boards, a permit therefor shall be obtained by the owners, lessee or person having the contract to do the same, from the Building Commissioner. The application for permit

shall be made in writing upon the printed forms furnished by the Department, shall be issued in the name of the owner or lessee and the contractor, if any, and it shall not be transferable." Section 867 provides: "Any person, firm or corporation or agent or employe who shall violate any provision of this code shall be subject, upon conviction thereof, to a fine of not to exceed $100 for such offense, and upon failure to pay, may be imprisoned until such fine and costs are paid, not exceeding thirty days. The continued violation of any provision shall constitute a separate offense for each and every day such violation of any provision hereof may continue."

The appellants filed their written application in the building department with the building commissioner of the city of South Bend for permission to repair and rebuild said building, said written application being filed pursuant to and in conformity with said building code, a copy of which is set out in the complaint.

That on March 25, 1926, Dalton Moomaw, building commissioner of the city of South Bend, and the city of South Bend refused to grant or issue to appellants or anyone else a permit to rebuild, repair or restore said building, and refused to allow appellants or anyone else to rebuild, repair or restore said building in any manner whatsoever. To this second paragraph of answer the appellees each filed separate replies in general denial. The case was then tried upon the issues thus formed.

The uncontradicted evidence shows that soon after the fire, appellee, Mayerfield, gave his check to appellants for the February rent, which check appellants returned and notified said Mayerfield that the damages to the building had not as yet been ascertained and that the appellants might not be able to repair and restore said building within the terms of the building code. On

the 5th day of February, 1926, appellants filed their written application with the building commissioners of the city of South Bend in conformity with said building code for permission to repair and restore said building. Thereupon the building commissioner took the matter under advisement and called for certain data before ruling upon the same, which was furnished by the appellants and on the 25th of March, 1926, the building commissioner of South Bend notified the appellants in writing that a permit to repair and restore said building was refused under the provisions of the building code of South Bend. The evidence as to the terms of the lease and the building code ordinance is not in dispute and is in substance as alleged in the pleadings.

There was no appeal from the decision of the building commissioner.

On Saturday, March 27, 1926, in the forenoon, appellants began tearing down said building and on said day removed the roof; thereupon on said day and after said roof had been removed, appellee, Mayerfield, filed his complaint for injunction to prevent appellants from tearing down said building and thereupon appellee, Paul C. Kuehn, intervened in said injunction suit and filed his cross-complaint praying for an injunction. After the filing of said suit for injunction, nothing further was done in the way of tearing down and removing said building for a period of six weeks. No bond for temporary restraining order having been filed, appellants after said period of six weeks, removed said building, and erected a new, modern building on said premises of fireproof construction, as required by the building code, of different design and construction, and leased said premises to other parties. The action for injunction was dismissed.

Thereafter appellee, Adolph R. Mayerfield, brought this action for damages for breach of lease and eviction

and said appellee, Paul C. Kuehn, intervened in said action and filed his cross-complaint asking for damages against appellants for eviction. There was a trial, finding and judgment for appellees.

The appellants filed a motion for a new trial on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law, which motion was by the court overruled, and which ruling of the court is assigned as error in this appeal.

The appellants contend that it was impossible for the appellants to rebuild without the permission of the building commissioner, and, whereas: the building commissioner refused to permit the rebuilding of the building, the appellants were thereby excused from further compliance with the terms of the lease as to rebuilding.

It appears that soon after the fire occurred, the appellants and appellees employed legal counsel, and we find that the parties followed the advice of their respective attorneys in their dealings with each other.

When the appellee, Mayerfield, sent appellants a check for the rent for February, 1926, the appellants returned the same with a letter that stated: "The extent to which the building has been destroyed by fire cannot be ascertained at this time. It may develop that we will be unable to rebuild or repair this building under the laws and ordinances governing the rebuilding of buildings on this location. If it should develop that we could not rebuild this building as it was, this would work a cancellation of the lease, and we can only determine this in connection with the proper authorities and expert advice as to the extent of the destruction. As soon as we are able to determine the true state of affairs, we shall confer with you as to what can be done."

In answer to the above letter appellee, Mayerfield, writes to appellants Poledors, that under the lease, "It

is your duty to proceed at once or as soon as can be reasonably done to rebuild this building or make such repairs as are necessitated by reason of the fire; and I now and hereby notify you to proceed with all reasonable diligence with such rebuilding or repairs as the case may be and I shall hold you responsible for any loss which may accrue to me by reason of your failure to comply with the foregoing provisions of the lease."

On February 13, 1926, the appellee, Kuehn, was given copies of all the correspondence between Poledors and Mayerfield, and Kuehn writes a letter to Mayerfield and Poledors in which he says, "I hereby demand of Adolph R. Mayerfield and Messrs. Poledor Brothers to immediately repair or rebuild the building covered by said lease, for my use and occupancy, in order to conduct my business of retailing shoes, shoe findings and hosiery."

Appellee Mayerfield testified that he did not know Poledors were having difficulty in getting a permit, but Mr. Poledor and he met on the street and Poledor said, "Well, what am I going to do, the city won't give me a permit?"

The appellee, Kuehn, testified that he read the letter from Poledors to Mayerfield, but that he was not interested in the building codes of South Bend. His words are, "If Mr. Hammerschmidt (my attorney) mentioned to me the possibility of the city refusing any permit, I was not interested. I thought my lease covered that."

Neither in the pleadings nor in the testimony of Mayerfield or Kuehn is the legality or regularity of the action of the building commissioner questioned. They rely solely upon the terms of the lease in reference to repairing and rebuilding and are demanding a compliance with the terms of the lease, notwithstanding the refusal of the building commissioner to grant the permit. We, therefore, have a condition of facts, where the appellees were demanding that the appellants go

upon the premises and repair or rebuild notwithstanding any ordinance to the contrary.

On the other hand, the appellants contend that the lease is at an end because of the ordinance and therefore the appellees cannot complain because of appellant's reentering and rebuilding according to and in compliance with the ordinance.

As early as 1811, we find the law stated in the case of *Bayless* v. *Pettyplace*, 7 Mass. 325, as follows: "No principle of law is better known and established than that where one makes a contract to do a possible and lawful act at a future time and before that time, it becomes impossible by the act of God, or the law, the obligation is saved." This case arose out of a contract to deliver sugar. An embargo prevented the fulfillment of the contract and compliance therewith was thereby excused.

The case of *Monica Borough* v. *Monica Street Railway Co.*, 247 Penn. 242, 247, states, "The law never exacts the performance of a contract where the performance would involve violation of law." The case arose out of a contract where a railway company was excused from the performance of the conditions of a bond to build a railroad by a certain date by reason of the fact that all the boroughs through which it was chartered to build its line had not consented to the construction of the road.

The law in New York is as follows: "The rule is well established that where performance is rendered impossible by an act of the law, non-performance is excused." *Kingsley* v. *City of Brooklyn*, 78 N. Y. 200; *Shellington* v. *Howland*, 53 N. Y. 371; *Heine* v. *Meyer*, 61 N. Y. 171; *Niblow* v. *Brinsee*, 1 Keys 478; *Hanover Bldg. Co.* v. *Jacobs*, 138 N. Y. Supp. 369.

In the case of *Heine* v. *Meyer, supra*, work was com-

menced on an old wall under a contract to rebuild the same when it was discovered the wall curved and was out of plumb and the superintendent of buildings in consequence thereof ordered the discontinuance of the work; held, that the contract was discharged from performance and the contractor was entitled to collect at the contract price for the work done, citing *Jones* v. *Judd,* 4 N. Y. 412; *People* v. *Bartlett,* 3 Hill 570; *Mounsey* v. *Drake,* 10 N. Y. 27.

In the case of *School District No. 16* v. *Howard,* 5 Neb. 340, 98 N. W. 666, the Board of Health closed the school and it was held that the contract with the school teacher was thereby discharged.

It was held in the case of *Cordez* v. *Miller,* 39 Mich. 581, that a covenant in the lease of a wooden building, binding the landlord to rebuild in the case it was burned, was released by the passage of a municipal ordinance prohibiting the erection of wooden buildings. The opinion is by Cooley, J., who says, "Cordez covenanted to rebuild, if destroyed by fire, the building he leased; but did not covenant that if not allowed to rebuild, that he would put up another on the same plan, of more substantial and presumably more costly material. Had the exact contingency which has since happened been in the minds of the parties at the time, it is scarcely conceivable that the lessor would have consented to put up a brick building in place of the one leased and to receive for it the same rent the wood building brought him, when its probable rental value would be considerably greater and its costs presumably more."

Cases of this kind are similar to cases where a lease provided for the letting of buildings for saloon purposes was terminated by subsequent statutes making the sale of liquor invalid. Uniformly held that it put an end to the lease. *Heart* v. *East Tenn. Brewing Co.,* 113 S. W. 364.

The case of *Jameison* v. *Indiana Natural Gas and Oil Co.* (1891), 128 Ind. 555, 28 N. E. 76, was a case where the company entered into an agreement to transport natural gas to Chicago, and it was impossible to transport it to the point at a pressure which did not exceed 325 pounds to the square inch. The complaint sets out the · act of the General Assembly of the State of Indiana of March 4, 1891, which contained a provision which prohibited this company from transporting gas through its pipe lines at more than its natural flow or pressure or more than at a pressure of 300 pounds to the square inch, or from using any artificial device to increase or maintain the flow of the gas. Judge Elliott, speaking for the court, said that the act was the proper exercise of the police power of the State of Indiana, and it follows as a matter of course that the company was excused from fulfilling its contract.

In the case of *Burgett* v. *Loeb* (1908), 43 Ind. App. 657, 88 N. E. 346, it is held, where the performance of a contract becomes impossible by a change in the law, the promisor is discharged.

We are of the opinion that the refusal of the building commissioner to grant a permit relieved the appellants from the obligation to rebuild.

It is contended by the appellants in this case that as between the original lessor and the sublessee there is no privity of contract or estate, therefore the sublessee did not acquire, by virtue of the sublease, any rights to any of the covenants or agreements of the lessor contained in the original lease. This point we need not decide, but for reference see *Powell* v. *Jones* (1912), 50 Ind. App. 493, 98 N. E. 646; but having decided that it is impossible for the appellants in this case to comply with the covenants in the lease, it follows as a logical result that the original lessee, not being able to confer upon the sublessee any greater

rights than he himself possesses, the subtenant's rights are measured by those of the original tenant, and the cancellation of the lease by operation of law as to one cancels as to both. *Bruder* v. *Geisler*, 47 Misc. 370, 94 N. Y. Supp. p. 2; *Shannon* v. *Grindstaff*, 11 Wash. 536, 40 Pac. 123; *Guschner* v. *West Lake* (Wash.), 86 Pac. 948.

Under the issues formed by the appellant's affirmative answers and the replies in general denial filed thereto and the uncontradicted evidence given in support of said answers, the decision of the court is contrary to law. Judgment reversed.

McMahan, J., dissents.

### Petition for Rehearing.

Lockyear, C. J.—The appellee in this case earnestly contends that this court erred in the original opinion in matters that we shall again review.

It is certain that the destruction of the building by fire would have put an end to the lease except for the clause covenanting to rebuild, for it has been held in the case of *Metzger* v. *Conley*, 82 Ind. App. 520, in a case where a theater building was almost completely destroyed by fire a short time before a lease therefor was to take effect, the owner was not bound to rebuild and repair the same and put it in condition for use as a theater for the reason that the lease was discharged by the destruction of the building.

So in this case the appellant would not, as a matter of law, have been required to rebuild except for the covenant in the lease requiring him to rebuild.

The ordinance and the refusal of the building commissioner to grant the permit prevented his compliance with the terms of his contract; therefore we were justified in holding that the lease was at an end.

Suppose the appellant had done nothing after the re-

fusal of the building inspector to grant the permit; suppose he had not taken possession and put up the building that he did; Would he have been liable? Certainly not. If he had not been liable in the one case, he is not liable in the other.

In our opinion we cited some cases where leases were terminated by the enactment of laws prohibiting the sale of intoxicating liquors where the premises had been rented for that purpose before the enactment of the prohibition law.

The law in that regard is well stated in the case of *Schaub* v. *Wright*, 79 Ind. App. 56. This case has been cited with approval in other states.

The appellee contends that in the granting of a building permit, the commissioner has no discretion. That it is simply a matter of form. With this contention we cannot agree. To hold otherwise would be to nullify the building ordinances of South Bend, and the laws of the state granting the powers to the city to enact such an ordinance. The ordinance was valid. The complaint in this case is not based upon any grounds showing that the appellees were denied or prevented from receiving all the benefits. The appellant is not charged with collusion or with fraud. The demand is, live up to the contract, ordinance or no ordinance—permit or no permit. Rebuild is the demand and no alternative.

Wood, Landlord and Tenant, Sec. 316. If one covenants to do a thing which is lawful and a statute comes in and hinders him from doing it the covenant is repealed. See also McAdam, on Landlord and Tenant (1910), p. 1329; *Beebe* v. *Johnson*, 19 Wend. 500; *People* v. *Bartlett*, 3 Hill. 570; *Jones* v. *Judd*, 4 N. Y. 412; *Regan* v. *Fosdeck*, 19 Misc. 489; *Young* v. *Leary*, 135 N. Y. 569.

Without extending this discussion to an undue length,

we desire to cite the following cases: *Crowley* v. *Northern Pac. Ry. Co.*, 41 L. R. A. N. S. 559, was a case where a carrier contracted to give annual passes in consideration of a grant of land, was held not liable for damages for refusal of further passes before the expiration of the contract period in obedience to a statute making the giving of passes illegal.

In *Knoxville* v. *Bird*, 12 Lea. 121, 47 Am. Rep. 326, where it was contended that the passage of an ordinance by a city, forbidding the erection of wooden buildings within fire districts impaired the obligation of a contract existing prior to the passage of such ordinance, between a landowner and a contractor to erect a wooden building, it was held that there was nothing in the objection, and the court quoted from Vol. 2, page 674, Parsons on Contracts, as follows: "If one agrees to do a thing which is lawful for him to do, and it becomes unlawful by an act of the legislature, the act avoids the promise; and so if one agrees not to do that which he may lawfully abstain from doing but a subsequent act requires him to do it, this act also avoids the promise."

And a like result was reached in *Binz* v. *National Supply Co.* (Tex. Civ. App.), 105 S. W. 543, where a contract was made for the construction of an oil plant and an ordinance was subsequently passed prohibiting the completion of the plant.

And where a tenement house is leased "to, to be used and occupied for the purpose of a place of amusement for the exhibition of moving pictures and for no other purposes whatsoever," and the licensing of such shows in tenement houses is subsequently prohibited by an ordinance the lessee is discharged from his obligation to pay rent accruing after the passage of such statute. *Adler* v. *Miles*, 69 Misc. 601, 126 N. Y. Supp. 135.

Petition for rehearing denied. Wood, J., dissents.