## Lutz et al. *v.* New Albany City Plan Commission et al.

[No. 28,708. Filed October 16, 1951. Rehearing denied November 21, 1951.]

76

*William L. Mitchell,* of Evansville, and *Robert R. Kelso,* of New Albany, for appellants.

*Jacob G. Rudy, Richard C. O'Connor, Chester S. Wentzell, Paul J. Tegart;* and *Bulleit & Orbison* (of counsel), all of New Albany, for appellees.

JASPER, J.—This appeal was taken from the judgment of the trial court, reviewing by certiorari the decision of the Board of Zoning Appeals of the City of New Albany, as provided under §53-783, Burns' 1951 Replacement. The judgment of the trial court upheld the legality of the decision denying a variance by the Board of Zoning Appeals.

Appellants' sole assignment of error is the overruling of their motion for a new trial.

Appellants contend that the action of the Board of Zoning Appeals was illegal for the reason that prior to the time of the passage of the zoning ordinance appellants had entered into a lease in which the rights, obligations, and liabilities thereunder had become vested; and further, that prior to the passage of the ordinance the real estate of appellants was in the process of conversion to a gasoline filling station; and that the application of the zoning ordinance as applied to appellants is a violation of Article 1, Section 24, of the Constitution of Indiana, and Article 1, Section 10, of the Constitution of the United States, and the Fourteenth Amendment to the Constitution of the United States.

The petition for a writ of certiorari, captioned by appellants as a complaint and petition for certiorari, was filed and later amended. Appellees filed an answer under our Rule 1-3. These pleadings would tend to show that the case was tried *de novo* instead of being reviewed by the trial court to determine the legality of the decision of the Board of Zoning Appeals of the City of New Albany. Section

53-788, Burns' 1951 Replacement, provides, in substance, that the trial court cannot hear the case *de novo*. However, the order of the trial court allowing additional evidence to be introduced to supplement the return to the writ shows that the trial court was following the correct procedure. Therefore, from the complete record, we find that this appeal comes to us from a review by the trial court upon its determination that the decision of the Board of Zoning Appeals of the City of New Albany was legal. It was not a trial *de novo*.

From the return to the writ of certiorari, and the supplemental evidence introduced, the following pertinent facts appear:

On July 9, 1946, George H. Bacher and Margaret P. Bacher were the owners of the South 120 feet of Lot 11 and the West 18 feet of Lot 12 of Block 28 of the Whitehill tract in the City of New Albany. On the last-mentioned date the owners of the real estate executed in writing to The Texas Company a ninety-day option to purchase the aforementioned real estate for $11,000. The option, among other things, provided that the buildings on the real estate were to remain the property of George H. Bacher and Margaret P. Bacher, and that they were to have six months after the exercising of the option by the optionee to remove the buildings from the real estate. The optionors were to pay three per cent. interest on the purchase price for the six-month period allowed for removal, the interest to be paid to The Texas Company or its nominee. This option was assigned to Philip Lutz, Jr., and Marie E. Lutz. On July 17, 1946, a lease was entered into by Philip Lutz, Jr., and Marie E. Lutz, leasing the real estate to The Texas Company. The lease called for the construction of a 2-bay gasoline service station to be erected by the lessors. The Texas Company, on October 4, 1946,

notified George H. Bacher and Margaret P. Bacher of the assignment of the option to Philip Lutz, Jr., and Marie E. Lutz, and that they were exercising the option. On November 26, 1946, the real estate involved herein was conveyed by warranty deed to Philip Lutz, Jr., who applied to the Civilian Production Administration for authority to build the service station. The application was denied. A mortgage loan for the construction of the service station was applied for and a commitment given. On February 1, 1947, George H. Bacher and Margaret P. Bacher removed the house and had the lots cleared as provided for under the option. The zoning ordinance passed by the City of New Albany became effective on February 27, 1947, placing the lots involved herein in Class U2, which class permitted residences and apartment houses to be erected, but did not permit the erection of gasoline service stations. On May 22, 1947, Philip Lutz, Jr., died, leaving a last will and testament under which appellants became the owners of the two lots. On June 18, 1949, a final report in the estate of Philip Lutz, Jr., was filed showing that at the date of his death he was the owner of the vacant lots. On April 2, 1949, John P. Lutz filed with the Board of Zoning Appeals of the City of New Albany an application for a variance from the requirements of the zoning ordinance to permit the erection of a 2-bay service station. After a public hearing, in which statements and evidence were heard, the variance was denied, and an appeal taken. On April 5, 1949, The Texas Company sent to appellants and one Mary K. Lutz a new lease to be effective May 1, 1949, which lease was executed. The lease was the same as the prior lease except for a few changes not pertinent to this appeal. It also called for the construction of a 2-bay service station to be completed in 180 days. Section 10 of the zoning ordinance of the City of New

Albany provided, among other things, for the continuance of nonconforming uses existing at the time of the passage of the ordinance. Therefore, we must first determine whether there was a nonconforming *use existing* when the ordinance was passed.

Zoning ordinances ordinarily have no retroactive effect and work no disturbance with existing uses of property. Real estate used for business may continue in such use, although later included in the residential district where such use is prohibited. In other words, existing uses need not conform to the zoning ordinance. The words "existing use" were interpreted in *Chayt* v. *Zoning Appeals Board* (1939), 177 Md. 426, 434, 9 A. 2d 747, 750, wherein the court said:

> "Therefore, on the question whether the terms of the ordinance permit classifying a purpose then merely contemplated, or intended for the future, as a use that existed at the time of the passage of the ordinance, the conclusion of this court has differed from that of the court below. 'As understood in the ordinance, "existing use" should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose; i. e., the conduct of a business. Ordinarily an existing use for business combines two factors: (a) Construction or adaptability of a building or room for the purpose, and (b) employment of the building or room or land within the purpose.' "

It is necessary therefore to determine whether or not, under the facts in the case now before us, construction was commenced. In *Southern Ind. R. Co.* v. *Indianapolis, etc. R. Co.* (1907), 168 Ind. 360, 372, 81 N. E. 65, 69, this court said:

> "When is the construction of a road commenced? The term has no technical meaning. What is its ordinary acceptation? It refers to the labor put forth to fit and adapt a certain selected route to

the running of cars. Construction is building. Building a road—constructing a road. This certainly does not include buying the ground on which to build and to construct it. Buying a piece of ground is not a part of constructing a house."

Appellants and their predecessors in title took an option for the purchase of vacant ground, although a building was upon it. The sellers reserved to themselves for six months the right to take the house from the lots, and to clear the lots, for which right they paid three per cent. interest on the. purchase price for such period. The vacant ground was purchased with the contemplation of building a gasoline service station. This is not commencing construction[1] to bring the land within a nonconforming existing use, *West Brothers Brick Co.* v. *Alexandria* (1937), 169 Va. 271, 192 S. E. 881, and, until construction was commenced, there could be no vested right. *Rice* v. *Van Vranken* (1929), 225 App. Div. 179, 232 N. Y. S. 506; *Caponi* v. *Walsh* (1930), 228 App. Div. 86, 238 N. Y. S. 438; *City of Lansing* v. *Dawley* (1929), 247 Mich. 394, 225 N. W. 500.

The zoning ordinance herein is, of course, subject to any vested rights in the property of appellants acquired prior to the enactment of the zoning law. But where no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building, there can be no vested rights. The fact that ground had been purchased and plans had been made for the erection of the building before the adoption of the zoning ordinance prohibiting the kind of building

---

[1] For a definition of the word "construction," see Webster's New International Dictionary (2d Ed.), p. 572, and *Scharff* v. *Southern Ill. Const. Co.* (1905), 115 Mo. App. 157, 170, 92 S. W. 126, 130.

contemplated, is held not to exempt the property from the operation of the zoning ordinance. *O'Rourke* v. *Teeters* (1944), 63 Cal. App. 2d 349, 352, 146 P. 2d 983, 985. Structures in the course of construction at the time of the enactment or the effective date of the zoning law are exempt from the restrictions of the ordinance. 58 Am. Jur., Zoning, §149, p. 1022. The service station was not in the course of construction so as to give to appellants vested rights, and was not a nonconforming use existing at the time of passage of the ordinance.

Appellants further contend that because of the leases entered into with The Texas Company they have vested rights under the contract, which if divested by the zoning ordinance is a violation of the Constitutions of the State of Indiana and of the United States.

Under the provisions of the lease first entered into, the term was for a period of ten years from the date the service station *was completed by lessors* and accepted by lessee. The lease further provided:

". . . that no rental shall accrue or become due until such time as a suitable service station, entirely satisfactory to lessee, shall have been (a) constructed upon the demised premises by the lessor as hereinafter provided, and (b) completed, equipped and delivered to lessee for the transaction of lessee's business."

Under this lease there could be no vested rights until such time as the improvements were placed upon the real estate. The lease was contingent upon the construction of the building.[1a] Performance under this lease, therefore, could not be required

[1a] For a definition of the term "vested right," see 11 Am. Jur., Constitutional Law, §370, p. 1199, and *Kennedy Coal* v. *Buck'n Coal* (1924), 140 Va. 37, 45, 124 S. E. 482, 484.

because it was rendered impossible by the zoning ordinance, and comes within the rule that, where performance is rendered impossible by an act of law, nonperformance is excused. *Poledor* v. *Mayerfield* (1932), 94 Ind. App. 601, 173 N. E. 292, 176 N. E. 32.

The second lease was entered into after the passage and effective date of the zoning ordinance. This lease, therefore, is subject to the provisions of the ordinance, and is within the rule that existing laws become a part of applicable contracts and must be read into them. *Dollman* v. *Pauley* (1931), 202 Ind. 387, 174 N. E. 729.

Neither lease could have created vested rights which would classify the real estate as a nonconforming use existing at the time of passage of the zoning ordinance. The law is well settled that zoning ordinances are a valid exercise of police power. *Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303. Contracts are subject to certain limitations which the state may lawfully impose in the exercise of its police power.[2] *Hagenback, etc., Show Co.* v. *Randall* (1921), 75 Ind. App. 417, 126 N. E. 501. Property rights may be divested under the exercise of police power where the rights have not vested. Since the leases created no vested rights, the real estate is subject to the zoning ordinance; and the ordinance, as it applies to the real estate of appellants, did not violate Article 1, Section 24, of the Constitution of Indiana, and Article 1, Section 10, of the Constitution of the United States, and the Fourteenth Amendment to the Constitution of the United States.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 101 N. E. 2d 187.

---

[2] See 12 Am. Jur., §421, p. 54, Constitutional Law, Police Power as Affecting Obligation of Contracts.