**FULTON COUNTY ADVISORY PLAN COMMISSION, Appellant (Defendant below),**

v.

**Gregory L. GRONINGER and Annette K. Groninger, Appellees (Plaintiff below).**

No. 25S03–0311–CV–492.

Supreme Court of Indiana.

June 22, 2004.

---

Byron D. Knight, Elizabeth A. Knight, Schererville, IN, Attorneys for Appellant.

Richard K. Helm, Warsaw, IN, Attorney for Appellees.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF AP-PEALS, NO. 25A03–0301–CV–22.

SULLIVAN, Justice.

The Fulton County Plan Commission required the applicants for approval of a new subdivision to modify the location of the roadway entrance to reduce impaired visibility. The trial court and Court of Appeals reversed the Plan Commission on grounds that the Commission's "Vision Clearance Standards" were not sufficiently precise to meet the notice requirements of applicable law. We find that the Standards provided the applicants with the notice they were due because the Standards were sufficiently precise when they advised applicants that approval of proposed subdivision entrances would be contingent upon the county zoning administrator finding that the entrance would not create a visual impairment.

### Background

Article 11.4, § k, of the Fulton County Zoning Ordinance authorizes the Fulton County Advisory Plan Commission to approve or reject subdivision plats. Gregory and Annette Groninger submitted a primary plat application to the Plan Commission seeking approval to construct the "Rolling Acres Estates" subdivision on some hilly real estate that they owned.

The proposed subdivision included a roadway entrance onto a highway. The combination of hilly terrain and the roadway entrance implicated the following provisions of Article 5.13 of the Zoning Ordinance:

The intent of Vision Clearance Standards are [sic] to provide for a safe vehicular and pedestrian transportation system. The visibility at intersections, driveways, curb cuts, and entrances are particularly important for the safe movement of vehicles and pedestrians.

The following Vision Clearance Standards apply to all intersections, drive[s], curb cuts, and entrances.

A. No curb cut or drive shall be permitted when:

(a) A minimum of 225 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, and the speed limit is 45 MPH or greater.

(b) A minimum of 175 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, or the visibility is determined to be impaired by the Zoning Administrator, and the speed limit is 45 MPH or less.

(c) The visibility to or from the desired location is determined to be impaired by the Zoning Administrator.

(Appellant's App. pp. 323–24.)

On July 9, 2001, the Plan Commission held a public hearing to determine if the Groningers' application met the requirements of the Zoning Ordinance and of the Fulton County Subdivision Control Ordinance.[1] During the hearing, members of the Plan Commission expressed concern over whether placing an entrance at the proposed location would create vision clearance hazards. The issue was tabled until the next meeting in order to investigate whether the roadway entrance met the Vision Clearance Standards contained in Article 5.13 of the Zoning Ordinance.

The Groningers' plat application was discussed again at an August 13, 2001, meeting of the Plan Commission. During the hearing, Casi Cramer, the Zoning Administrator, reported that she and Fulton County Surveyor Don Towne had investigated the proposed entrance. Both Cramer and Towne acknowledged that they were not licensed surveyors. Towne took the position that there was a vision clearance hazard because the entrance was only 180 feet from the crest of the hill. Cramer also said that he had contacted an independent engineering firm, Wightman Petrie, Inc., for a preliminary consultation. Wightman Petrie's initial findings were that the proposed entrance did not comply with the 225 feet requirement. Wightman Petrie's professional opinion was that the proposed entrance created a vision clearance hazard.

The Plan Commission voted to approve the primary plat application subject to the roadway entrance meeting the standards of the Zoning and Subdivision Control Ordinances.[2]

Pursuant to the Subdivision Control Ordinance, the Groningers then submitted the primary plat application to the Plan Commission for signatures.[3] The plat application had not changed the location of the roadway entrance. The Plan Commission met again on September 10, 2001, and discussed whether the Groningers' primary plat application could be signed. The Plan Commission did not sign the plat at that time but decided to hire Wightman Petrie to examine more fully the entrance to determine if it was in compliance with the Vision Clearance Standards.

On September 25, 2001, Wightman Petrie submitted an engineering report regarding the proposed entrance. The report stated that the proposed entrance was located more than 225 feet from the crest of the hill. However, the report further

1. All primary plat applications submitted to the Plan Commission must comply with both the Fulton County Zoning Ordinance and the Subdivision Control Ordinance. Article 4.3 of the Fulton County Zoning Ordinance.

2. § 3.8(A) of the Subdivision Control Ordinance permits the Plan Commission to either approve, approve with conditions, continue, or deny the primary plat following a public hearing on the matter.

3. § 3.8(D) of the Subdivision Control Ordinance requires that within three months after the plat has been approved, the applicant must submit the primary plat and related materials for signature by two officers of the Plan Commission.

stated that the proposed entrance did not comply with the American Association of State Highway and Transportation Officials ("AASHTO") Design Standards and concluded that the proposed entrance would create hazardous driving conditions.[4]

On September 26, 2001, the Zoning Administrator sent a letter to the Groningers stating that their primary plat application did not comply with the vision clearance standards of the Zoning Ordinance. The letter also stated that the Groningers must submit a newly engineered plat to the Plan Commission for signatures.

On October 19, 2001, the Groningers submitted a modified primary plat that changed the location of the roadway entrance. The modified plat met the vision clearance standards and was approved. Instead of beginning construction on the subdivision, the Groningers filed a complaint on October 25, 2001, in the Fulton Circuit Court. They requested that the trial court mandate the Plan Commission to approve the original primary plat application. The trial court granted the Groningers a summary judgment, concluding that their original proposal had complied with the requirements of the Zoning and Subdivision Control Ordinances and that they had received no notice that a higher standard might be contemplated. The court ordered the Plan Commission to take the necessary steps for approval of the original plat.

The Court of Appeals affirmed the trial court's grant of summary judgment. *Fulton County Advisory Plan Comm'n v. Groninger*, 790 N.E.2d 541, 549 (Ind.Ct. App.2003). The court concluded that part (c) of the Vision Clearance Standards was invalid because it was not a sufficiently

definite standard and that the Groningers had complied with the remaining parts of the Vision Clearance Standards. *Id.* We granted transfer, 2003 Ind. LEXIS 924 (Ind. Nov. 7, 2003), and now reverse the trial court.

### Discussion

This court reviews, with tragic frequency, cases involving automobile accidents in which claims are lodged of improper attention to safety in highway design. For that reason, the purpose of the Vision Clearance Standards and the Plan Commission's concern over impaired visibility from a subdivision entrance is readily apparent to us.

Ind.Code § 36–7–4–702(b) (2002) provides that a subdivision control ordinance "must specify the standards by which the commission determines whether a plat qualifies for primary approval." The Groningers argue, and the trial court and Court of Appeals found, that Article 5.13 of the Zoning Ordinance did not define the vision clearance standards for the approval of plat applications with sufficient precision to meet the requirements of Ind.Code § 36–7–4–702(b).

■ The determination of this issue turns upon whether the language and requirements of the ordinance can be understood with "reasonable certainty." *Carpenter v. Whitley County Plan Commission*, 174 Ind.App. 412, 367 N.E.2d 1156, 1161 (1977) (quoting *Fred Geiger & Sons v. Schmitt*, 186 Ind. 292, 116 N.E. 50, 51 (1917)). We have previously stated that a valid ordinance must be "concrete" and "precise, definite, and certain in expression." *Knutson v. State ex rel Seberger*, 239 Ind. 656, 157 N.E.2d 469, 471

---

4. Wightman Petrie also recommended that the Zoning Ordinance be "amended to comply with AASHTO Design Standards."

(1959) reh'g denied, 239 Ind. 656, 160 N.E.2d 200; *Kosciusko County Area Plan Comm'n v. 1st Source Bank*, 804 N.E.2d 1194 (Ind.Ct.App.2004); *Tippecanoe County Area Plan Commission v. Sheffield Developers*, 181 Ind.App. 586, 394 N.E.2d 176 (1979). Formulated slightly differently, a plan commission is required to exercise its authority in a standardized and clearly defined manner so as to enable both the plat applicant and the municipality to act with assurance and authority regarding the development of the area in question. *Knutson*, 157 N.E.2d at 471.

■ The Groningers contend that they were entitled to have their original proposal approved because it satisfied the 225 and 175 feet requirements of the Zoning Ordinance as specified by subsections (a) and (b). They maintain that if subsection (c) is read in isolation, it cannot be found to be sufficiently precise to comply with Ind.Code § 36–7–4–702(b). To support their argument, they cite comments made by the Zoning Administrator during a public hearing where she said, "I want to know if the entrance is 225 feet from the crest of the hill or not ... that's all I want to know ... if it is then it's not a problem ... because it clears the vision clearance standard." (Appellant's App. at 340–41). The Groningers further contend that the Plan Commission's decision to apply the AASHTO standards in determining whether the proposed entrance created a vision clearance hazard failed to put them on notice of what was actually required for plat approval. By merely reading subsection (c), they say, no applicant would have any way of knowing that an entrance is required to meet not only the requirements of subsections (a) and (b), but also the higher, more specific standards set out by AASHTO.

We find the Groningers' reading of the ordinance contrary to its plain language and its characterization of the Plan Commission's action contrary to law and precedent.

For emphasis, we repeat the Vision Clearance Standards:

No curb cut or drive shall be permitted when:

(a) A *minimum* of 225 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, and the speed limit is 45 MPH or greater.

(b) A *minimum* of 175 feet from the crest of a hill where the slope on either side of the crest is 6% or greater, or the visibility is determined to be impaired by the Zoning Administrator, and the speed limit is 45 MPH or less.

(c) The visibility to or from the desired location is determined to be impaired by the Zoning Administrator.

Subsections (a) and (b) do not, contrary to the Groningers' argument, set forth fixed and immutable standards. Rather, they set forth *minimum* standards—the Plan Commission will not approve an application that does not meet these minimums. But the import of the use of the word "minimum" in both subsections (a) and (b) is that 225 feet or 175 feet may well not be enough if visibility is nevertheless impaired because of the grade or shape of the road, foliage considerations, and the like. Because the plain language of subsections (a) and (b)—again, the use of the word "minimum"—puts a reader on notice that more may very well be required in order to receive approval for an entrance, the Groningers are incorrect in asserting that their plat was entitled to be approved simply because it met the 225/175 feet benchmarks.

■ Although it is true that in order to be valid, an ordinance must be "precise,

definite, and certain in expression," it is equally true that the courts of this state will not construe an ordinance so as to defeat its purposes "if it is sufficiently definite to be understood with reasonable certainty." *Burrell v. Lake County Plan Comm'n,* 624 N.E.2d 526, 529 (Ind.Ct.App. 1993), transfer denied (quoting *Carpenter,* 367 N.E.2d at 1161). In this case, the purpose of Article 5.13 is to provide for a "safe vehicular and pedestrian transportation system." What is important is that the "visibility at intersections, driveways, curb cuts, and entrances" be safe for the movement of vehicles and pedestrians. That being the case, subsection (c) (as the Groningers themselves contend) cannot and should not be read in isolation from subsections (a) and (b). Subsection (c) reiterates the overarching purpose of Article 5.13, the prevention of visual impairment, and conditions subsections (a) and (b) upon it. In this case, an applicant would understand the Ordinance with "reasonable certainty" to require an entrance to be built to satisfy the purpose of avoiding visual impairment, not just the minimums of subsections (a) and (b).

Indeed, the Court of Appeals has previously upheld zoning ordinances that set forth similar requirements designed to protect the safety and health of potential residents without listing specific numerical requirements as being sufficiently concrete, precise and definite under Ind.Code § 36–7–4–702(b).

5. The ordinance in *Brant* read:

No land shall be subdivided for residential use unless adequate access to the land over approved streets or thoroughfares exist or will be provided by the subdivider, or if such land is considered by the commission to be unsuitable for such use by reason of flooding or improper drainage, objectionable earth or rock formation topography, or any other feature harmful to the health and

In *Burrell,* the plat applicants appealed the denial of their application, challenging Lake County subdivision ordinance regulations on grounds that a section requiring denial of a plat "where a proposed subdivision would adversely affect the health, safety, or general welfare of the County" was vague and uncertain. 624 N.E.2d at 528. The section provided in part:

No land shall be subdivided which is unsuitable for subdivision by a reason of flooding, collection of ground water, bad drainage, adverse earth or rock formation or topography, or any feature likely to be harmful to the health, safety, or welfare of the future residents of the subdivision or of the community. Such lands shall not be considered for subdivision until such time as the conditions causing the unsuitability are corrected.

*Id.* at 530. Relying on *Tippecanoe County Area Plan Comm'n v. Sheffield Developers, Inc.* 394 N.E.2d at 185, the court found the ordinance provided ample notice to the plat applicants of the conditions, "flooding, bad drainage, and risks of leaching and biological contamination due to the presence of adverse soils, i.e., adverse 'earth,'" that would be evaluated by the planning commission. *Burrell,* 624 N.E.2d at 530. Nearly identical ordinances were upheld as sufficiently precise in both *Brant v. Custom Design Constructors Corp.,* 677 N.E.2d 92, 99 (Ind.Ct.App. 1997),[5] and *Wolff v. Mooresville Plan Comm'n,* 754 N.E.2d 589, 593 (Ind.Ct.App. 2001).[6]

safety of potential residents in the community as a whole.
*Brant,* 677 N.E.2d at 98–99.

6. The ordinance in *Wolff* read:

No land shall be subdivided for residential use unless adequate access to the land over improved streets or thoroughfares exists or will be provided by the subdivider, or if such land is considered by the commission to be unsuitable for such use by reason of

This issue arose again in regards to an ordinance regulating access to a county road in *Kosciusko County Area Plan Commission v. 1st Source Bank.* There the ordinance listed several factors that the planning commission would consider when deciding whether to approve or deny a plat application: (1) whether streets were of sufficient width and proper grade; (2) whether streets were so located as to accommodate the probable volume of traffic thereon; (3) whether streets provided access of fire fighting equipment to buildings; and (4) whether the streets conformed to the County Transportation Plan, which also included a list of objectives. 804 N.E.2d at 1194. The court held that this list was sufficiently precise to give fair warning to the public as to what the planning commission would consider in approving or denying a plat application.

In our case, similar to the ordinances in *Burrell, Brant, Wolff,* and *Kosciusko County,* Article 5.13 placed the Groningers on notice of a condition that would be evaluated by the Plan Commission: whether the proposed entrance created a visual impairment.

 We find it necessary to give particular attention to the Groninger's challenge to the Plan Commission's decision to apply the AASHTO standards in determining whether the proposed entrance would be safe. They suggest that the testimony of the Zoning Administrator, Casi Cramer, at the administrative hearing held on July 9, 2001, led them to believe that the determination of whether the entrance way would be visually impaired would be based upon whether the design satisfied the numerical "minimums" set forth in subsections (a) and (b). The Groningers argue that under

*Equicor Development Inc. v. Westfield–Washington Township Plan Commission,* 758 N.E.2d 34 (Ind.2001); the Plan Commission forfeited the right to use the AASHTO standards as opposed to the "minimum" numerical requirements set forth in subsections (a) and (b) by not specifically introducing the AASHTO standards in previous hearings. They assert that the Plan Commission must use the exact measurements set forth in subsections (a) and (b) of Article 5.13 or notify them at the earliest opportunity of their choice to use other standards.

In *Equicor,* we held that the Westfield–Washington Plan Commission was estopped from citing a deficiency in parking spaces as a reason for denying a plat application. *Equicor,* 758 N.E.2d 34, 40. Equicor submitted its original application in February, 1998. Three more hearings were held over a period of three months before the plan commission denied the application over concerns about adequate parking space. Equicor argued that the plan commission in the previous hearings offered suggestions but that they had been unrelated to parking. Equicor, in reliance on those earlier hearings and suggestions, made changes to the design. We found that the plan commission had had "ample opportunity to point out any deficiency in the designation of parking, and Equicor reasonably relied on the absence of any parking issue in processing its proposal." *Equicor,* 758 N.E.2d at 40.

This case is not *Equicor,* which we view as having been highly unusual. The Groningers were not—and do not allege that they were—unaware that visual impairment was at issue in the plat application from the very first hearing. At no time

---

commission to be unsuitable for such use by reason of flooding or improper drainage, objectionable earth and rock formation, topography, or any other feature harmful to

the health and safety of possible residents and the community as a whole.

*Wolff,* 754 N.E.2d at 593.

did the Plan Commission rule that the satisfaction of the "minimum" standards set out in subsections (a) and (b) solved the vision clearance issue. Other than their refusal to alter the original design, the Groningers show no reliance on the statements made by Casi Cramer at the August 13, 2001, hearing. The Groningers were notified on September 10, 2001, that the Plan Commission would hire Wightman Petrie to determine if the entrance way was visually impaired. On September 25, 2001, the engineering report indicated that while the entrance way met the "minimums" set forth in Article 5.13, it failed to meet the AASHTO standards and it created a hazardous driving condition. *Id.* at 399. On September 26, 2001, the Groningers were notified that their primary plat application was denied for failure to satisfy the vision clearance standards of Article 5.13.

Indeed, the record suggests that AASHTO design standards are uniformly recognized national safety standards. We are of the view that the Plan Commission's decision to utilize the AASHTO standards furthered the very objectivity that the Groningers say they advocate.

### Conclusion

The Vision Clearance Standards contained in Article 5.13 of the Fulton County Zoning Ordinance are sufficiently "concrete" and "precise" to provide notice to plat applicants of the standards that are used to determine whether a roadway entrance creates a visual impairment. Furthermore, Fulton County is not estopped from denying the Groningers' plat application.

Having previously granted transfer, we now reverse the judgment of the trial court and remand to the Fulton County Advisory Plan Commission for final review of the Groningers' proposed primary plat application consistent with this opinion.

SHEPARD, C.J., DICKSON, BOEHM, and RUCKER, JJ., concur.