ATTORNEYS FOR APPELLANT
Anthony W. Overholt
Jeffrey S. McQuary
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Alan S. Townsend
George T. Patton, Jr.
Paul D. Vink
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S05-0511-CV-510

METRO. DEV. COMM'N
OF MARION COUNTY, ET AL.,

*Appellant (Defendant below)*,

v.

PINNACLE MEDIA, LLC,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D02-0201-PL-000078
The Honorable Kenneth H. Johnson, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-0309-CV-465

**November 3, 2005**

**Sullivan, Justice.**

Pinnacle Media, LLC, seeks a declaration that a change in the zoning ordinance of the City of Indianapolis concerning billboard location permits is not applicable to its plan to erect 10 billboards in Indianapolis. Because no construction or other work that gave Pinnacle a vested interest in the billboard project had begun on the billboards at the time of the ordinance change, the ordinance change did apply to the 10 billboards.

## Background

Pinnacle Media, LLC, erects and leases advertising billboards. In July, 1999, after some period of discussion, the City of Indianapolis advised Pinnacle in writing that the City's billboard location permit regulation did not apply with respect to billboards proposed to be erected in interstate highway rights-of-way because those rights-of-way were not covered by the City's zoning ordinance.

Pinnacle thereupon embarked on a plan to erect billboards without applying to the City for a permit. Its plan consisted of three steps. First, it would lease land for this purpose from Hoosier Heritage Port Authority, an entity that owned abandoned railroad rights-of-way at points where the abandoned railroad rights-of-way intersected with or were otherwise coextensive with interstate highway rights-of-way. Second, it would seek permits from State government, specifically, the Indiana Department of Transportation ("INDOT"), which is responsible for interstate highways. Third, it would erect the billboards without seeking any approval from the City. Following this plan, Pinnacle erected two billboards in 1999, after leasing rights-of-way and obtaining INDOT permits.

Shortly thereafter, Pinnacle initiated efforts to erect 15 additional billboards by securing additional leases and submitting additional applications to INDOT. The last of these applications was submitted on April 19, 2000. A period of negotiation with the State followed during which INDOT initially denied all 15 of the applications. Pinnacle appealed the denials and ultimately entered into a settlement with the State. Well over a year later, on June 18, 2001, INDOT approved 10 of the applications and Pinnacle abandoned its request for the other five in accordance with the settlement.

Meanwhile, following the erection of the two initial billboards, the City reexamined its policy in respect of excluding interstate highway rights-of-way from the coverage of its zoning ordinance. On April 26, 2000, the City officially proposed an amendment to this effect to its zoning ordinance. Pinnacle and other interested parties received notice of the proposed amendment on April 28, and were given the opportunity

to appear at a public hearing on the matter on May 17. On July 10, 2000, the City-County Council enacted into law an amendment to the zoning ordinance, assigning zoning classifications to the previously un-zoned land occupied by interstate highways. Indianapolis/Marion County Rev. Code §§ 730-100 through -103. This had the effect of making the City's billboard location permit applicable to billboards proposed to be erected in interstate highway rights-of-way.

Following receipt of the INDOT approvals in 2001, Pinnacle began erecting one of the billboards. The City issued a stop work order on grounds that Pinnacle had not obtained the permit for the billboard required by the amended zoning ordinance.[1] Pinnacle ceased construction and subsequently filed suit against the City, seeking a declaration that the amendment to the zoning ordinance was inapplicable to the 10 permits and that the stop work order was void and unenforceable. The City filed a motion to dismiss, which the trial court denied,[2] and both parties subsequently filed for summary judgment. The trial court granted summary judgment in favor of Pinnacle and also concluded that Pinnacle was entitled to attorney fees because the City engaged in "frivolous, unreasonable, or groundless litigation." Appellant's App. at 9-10. The Court of Appeals affirmed the determination of the trial court that the amendment to the zoning ordinance was inapplicable to the 10 permits but reversed the trial court on the attorney fees issue. Metro. Dev. Comm'n v. Pinnacle Media, LLC, 811 N.E.2d 404, 414 (Ind. Ct. App. 2004). We now grant transfer and reverse the judgment of the trial court.

---

[1] After this lawsuit was filed, the City took the position that Pinnacle needed the City's approval to erect billboards even before the zoning ordinance was amended. Because we hold that the amended ordinance governs the 10 billboards at issue here, we need not address this contention.

[2] In denying the City's motion, the trial court found that the City was estopped from arguing that the doctrine of vested rights did not apply because Pinnacle detrimentally relied on the City's representations that it did not have jurisdiction to issue the improvement location permits. Order on Defendant's Motion to Dismiss (Pappas, J., pro tempore), Appellant's App. at 39. The court relied on our decision in Equicor Dev. v. Westfield-Washington Twp., 758 N.E.2d 34 (Ind. 2001). In Equicor, this Court made an exception to the general rule that "government entities are not subject to equitable estoppel." Id. at 39 (citing State ex rel. Agan v. Hendricks Superior Court, 250 Ind. 675, 678, 235 N.E.2d 458, 460 (1968)). In Fulton County Advisory Plan Comm'n v. Groninger, 810 N.E.2d 704 (Ind. 2004), we made it clear that we found the facts in Equicor to be "highly unusual." Id. at 710. The trial court's ruling here preceded Groninger.

3

**Discussion**

**I**

The question of whether Pinnacle's 10 billboards are subject to the 2000 zoning ordinance amendment implicates two disparate lines of Indiana cases. Both lines employ the term "vested rights" and generally stand for the proposition that a person's "vested rights" are protected against retroactive application of a change in law. But each line takes a quite different approach to defining or determining when a "vested right" exists, and these approaches can lead to different results.

**A**

The first line of cases arises under a zoning law principle called "nonconforming use." A nonconforming use is a use of property that lawfully existed prior to the enactment of a zoning ordinance that continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions. Metro. Dev. Comm'n. v. Marianos, 408 N.E.2d 1267, 1269 (Ind. 1980). The general rule is that a nonconforming use may not be terminated by a new zoning enactment. See Jacobs v. Mishawaka Bd. of Zoning Appeals, 182 Ind. App. 500, 501-02, 395 N.E.2d 834, 836 (1979) ("An ordinance prohibiting any continuation of an existing lawful use within a zoned area is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power."). In these situations, it is often said that the landowner had a "vested right" in the use of the property before the use became nonconforming, and because the right was vested, the government could not terminate it without implicating the Due Process or Takings Clauses of the Fifth Amendment of the federal constitution, applicable to the states through the Fourteenth Amendment.[3] U.S. Const., amends V & XIV. See generally, John J. Delaney and Emily J. Vaias, Recognizing Vested Development Rights as Protected Property in Fifth Amendment Due Process and Takings Claims, 49

---

[3] See Bd. of Zoning Appeals v. Leisz, 702 N.E.2d 1026, 1031 (Ind. 1998), where we held that a zoning ordinance that provided for the forfeiture of a prior nonconforming use if it was not registered did not violate the Fifth and Fourteenth Amendments.

4

Wash. U. J. Urb. & Contemp. L. 27, 31-35 (1996).

A relatively frequent subject of land use litigation is whether a developer can have a "vested interest" in a nonconforming use that is only intended—construction has not yet begun at the time of the new enactment—such that the government cannot terminate it. See Linda S. Tucker, Annotation, Activities in Preparation for Building as Establishing Valid Nonconforming Use or Vested Right to Engage in Construction for Intended Use, 38 A.L.R.5th 737, 752 (1996 & Supp. 2005).

This Annotation reflects the fact that many courts, including ours, have been presented with cases where a developer encounters a zoning change after embarking on a project but before beginning construction. The leading Indiana case on this subject—discussed in the Annotation—is Lutz v. New Albany City Plan Comm'n, 230 Ind. 74, 101 N.E.2d 187 (1951).

As a general proposition, the courts have been willing to hold that the developer acquires a "vested right" such that a new ordinance does not apply retroactively if, but only if, the developer "(1) relying in good faith, (2) upon some act or omission of the government, (3) . . . has made substantial changes or otherwise committed himself to his substantial disadvantage prior to a zoning change." Delaney & Vaias, supra, at 31-35 (citing Sgro v. Howarth, 203 N.E.2d 173, 177 (Ill. Ct. App. 1964)).

Indiana law, as enunciated in Lutz, is consistent with these principles. In that case, the developer acquired real estate pursuant to an option agreement that required the seller to demolish a house on the property and clear the lots for construction of a gasoline service station. The developer secured a mortgage commitment to finance the construction and entered into an agreement by which a petroleum concern would lease and operate the service station when built. After all of these actions had been taken but before construction of the service station itself began, the city enacted a zoning ordinance that did not permit the erection of gasoline service stations on the real estate in question. Lutz, 230 Ind. at 78-79, 101 N.E.2d at 189.

When the developer's application for a zoning variance was denied by the Board of Zoning Appeals, the developer appealed, contending that by entering into the lease and proceeding to convert the real estate to a service station prior to the passage of the zoning ordinance, his rights to use of the property in that way had become vested and that the application of the zoning ordinance to him was unconstitutional. Id. at 77, 101 N.E.2d at 188. The trial court affirmed the decision of the Board of Zoning Appeals, as did this Court:

> The zoning ordinance herein is, of course, subject to any vested rights in the property of appellants acquired prior to the enactment of the zoning law. But where no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building, there can be no vested rights. The fact that ground had been purchased and plans had been made for the erection of the building before the adoption of the zoning ordinance prohibiting the kind of building contemplated, is held not to exempt the property from the operation of the zoning ordinance. Structures in the course of construction at the time of the enactment or the effective date of the zoning law are exempt from the restrictions of the ordinance. The service station was not in the course of construction so as to give to appellants vested rights, and was not a nonconforming use existing at the time of passage of the ordinance.

Id. at 81-82, 101 N.E.2d at 190.


**B**


The second line of cases traces its origin in Indiana law to zoning law but has over the years been invoked more generally when a person has an application for a government permit pending at the time a law governing the granting of the permit changes.

The lead case in this line illustrates the point. In Knutson v. State ex rel. Seberger, 239 Ind. 656, 160 N.E.2d 200 (1959) (on reh'g), this Court held that an application for approval of a subdivision plat was not subject to the provisions of a subdivision control ordinance enacted by a town council after the date on which the application was first

6

filed.[4]

The Court in Knutson said that "a municipal council may not, by the enactment of an emergency ordinance, give retroactive effect to a pending zoning ordinance thus depriving a property owner of his right to a building permit in accordance with a zoning ordinance in effect at the time of the application of such permit." Id. at 667, 160 N.E.2d at 201 (citing State ex rel. Fairmount Center Co. v. Arnold, 138 Ohio St. 259, 34 N.E.2d 777 (1941)). The Knutson Court went on to say that "[t]his rule, we believe, is consistent with the general rule of law that ordinances or statutes which are substantive in their effect are not retroactive." Id. at 668, 160 N.E.2d. at 201. The Court then quoted the Corpus Juris Secundum: "[T]he general rule, which is almost universally supported by the authorities, is that retrospective laws are unconstitutional if they disturb or destroy existing or vested rights." Id. (quoting 16A C.J.S., Constitutional Law § 417 at 99-103) (emphasis added).

Knutson has been relied upon by the Court of Appeals in a number of cases for the proposition that a change in law cannot be applied retroactively in respect of a permit application on file with a permitting agency at the time of the change. See Steuben County v. Family Dev., Ltd., 753 N.E.2d 693 (Ind. Ct. App. 2001), trans. denied (concerning a permit for a landfill); Yater v. Hancock County Bd. of Health, 677 N.E.2d 526 (Ind. Ct. App. 1997) (concerning septic permits); Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. of Ind., Inc., 604 N.E.2d 1199 (Ind. Ct. App. 1992), trans. denied (concerning a hazardous waste disposal permit); Bd. of Zoning Appeals of Ft. Wayne v. Shell Oil Co., 164 Ind. Ct. App. 497, 329 N.E.2d 636 (1975) (concerning a building permit for gas station).

---

[4] The procedural setting of Knutson was somewhat complicated. In unrelated collateral litigation, a trial court had declared the subdivision control ordinance of the Town of Dyer to be unconstitutional and this Court found that ruling to control in Knutson. As such, the question presented in Knutson was whether the developer was entitled to have its plat approved by the Town Council, whose decision, in the absence of an effective subdivision control ordinance, was controlled only by the state statute governing subdivisions. This Court ordered the Town Council to approve the plat. On rehearing, the Town Council argued that a new subdivision control ordinance had been enacted after the first had been declared unconstitutional and that the developer's application had been properly denied pursuant to the new ordinance's terms.

## II

In one respect, the <u>Lutz</u> and <u>Knutson</u> precedents are quite consistent.  Both clearly stand for the proposition that changes in zoning ordinances are "subject to any vested rights," <u>Lutz</u>, 230 Ind. at 81, 101 N.E.2d at 190; that such changes "are unconstitutional if they disturb or destroy existing or vested rights," <u>Knutson</u>, 239 Ind. at 667, 160 N.E.2d at 201.  But in another respect, <u>Lutz</u> and <u>Knutson</u> lie in uneasy tension with one another.  If the land acquisition, demolition, and site preparation work in <u>Lutz</u> is not enough to establish a vested interest, how can it be that the mere filing in <u>Knutson</u> of a building permit (when, by definition, no construction has yet begun) is enough to do so?  In the words of one commentator, "[i]t is difficult to see how the theoretically distinguishable concept of nonconforming use, protecting owners of developed property from the provisions of subsequently enacted zoning regulations, could logically be applied to protect a landowner who has only reached the stage of applying for a building permit."  Roland F. Chase, Annotation, <u>Retroactive Effect of Zoning Regulation, in Absence of Saving Clause, on Pending Application for Building Permit</u>, 50 A.L.R.3d 596, 607 (1973; Supp. 2005).

Pinnacle argues adamantly that this is not a nonconforming use case for which <u>Lutz</u> is precedent but a permit application case controlled by <u>Knutson</u>.  While for reasons we will set forth in a moment we think this is a nonconforming use case, we also think, at least in respect of building permits, the <u>Knutson</u> rule should be revisited.

To repeat, the Court in <u>Lutz</u> held that "[t]he zoning ordinance herein is, of course, subject to any vested rights in the property of appellants acquired prior to the enactment of the zoning law.  But where no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building, there can be no vested rights."  <u>Lutz</u>, 230 Ind. at 81, 101 N.E.2d at 190.  We think this is the correct rule for nonconforming uses, one that is the rule of most jurisdictions.  <u>See, e.g.</u>, <u>Town of Orangetown v. Magee</u>, 665 N.E.2d 1061 (N.Y. 1996); <u>Finch v. Durham</u>, 384 S.E.2d 8 (N.C. 1989) (reh'g denied); <u>Snake River Venture v. Bd. of County Comm'rs</u>, 616 P.2d 744 (Wyo. 1980); <u>Houston v. Bd. of City Comm'rs</u>, 543 P.2d 1010

(Kan. 1975); Blundell v. West Helena, 522 S.W.2d 661 (Ark. 1975); Perkins v. Joint City-County Planning Comm'n, 480 S.W.2d 166 (Ky. 1972).

If "there can be no vested rights" where "no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building," then in logic, the filing of a building permit—an act that must be done before any work is commenced—cannot alone give rise to vested rights.

Furthermore, at least as to building permits, Knutson is out of the mainstream. "In most jurisdictions it is clear that, as a general rule, . . . a zoning regulation may be retroactively applied to deny an application for a building permit, even though the permit could have been lawfully issued at the time of application." Chase, supra, at 607. See, e.g., Town Pump, Inc. v. Bd. of Adjustment, 971 P.2d 349 (Mont. 1998) (upholding the retroactive application of a zoning change where there was a building permit on file); Whitehead Oil Co. v. Lincoln, 451 N.W.2d 702 (Neb. 1990) (noting and applying the "general rule"); Gay v. Mayor of Lyons, 93 S.E.2d 352 (Ga. 1956) (upholding the retroactive application of a zoning change where there was a building permit on file); Brougher v. Bd. of Pub. Works, 271 P. 487 (Cal. 1928) (same); Cayce v. Hopkinsville, 289 S.W. 223 (Ky. 1926) (same).

With respect to building permits, then, Knutson's suggestion that having a building permit on file creates a vested right that cannot be overcome by a change in zoning law is overruled.[5]

---

[5] As noted in the text above, the Knutson principle has been applied to applications for a number of other types of government permits. See Steuben County v. Family Dev., Ltd., 753 N.E.2d 693 (Ind. Ct. App. 2001), trans. denied (concerning a permit for a landfill); Yater v. Hancock County Bd. of Health, 677 N.E.2d 526 (Ind. Ct. App. 1997) (concerning septic permits); Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. of Ind., Inc., 604 N.E.2d 1199 (Ind. Ct. App. 1992), trans. denied (concerning a hazardous waste disposal permit). Because the law and facts in each of these cases differs materially from those applicable to building permits, we limit our holding today only to building permits.

Regardless of <u>Knutson</u>'s viability, we do not believe its rule is available to Pinnacle in this case. While Pinnacle argues vehemently that this is not a nonconforming use case, we believe that it is properly analyzed under <u>Lutz</u>'s principles. When Pinnacle set out to erect the 10 (initially 15) billboards, there was no location permit required by the City. This is exactly the position the developer in <u>Lutz</u> was in when it started out to develop the gasoline service station. The question there—as we find it to be here—was whether, at the time of the change in the zoning ordinance, construction had proceeded on the project to the point that the developer had a vested interest. As discussed, the Court held that the construction had not. <u>Lutz</u>, 230 Ind. at 81, 101 N.E.2d at 190.

In this case, no construction of any kind had proceeded on the 10 billboards as of April 26, 2000, the date the ordinance change was officially proposed, or even July 10, 2000, the date it was enacted. Pinnacle does not present us with any argument that it made construction expenditures before the enactment of the zoning ordinance change.[6] Nor could it. It was not until 11 months later, June 18, 2001, that Pinnacle received the separate approvals required by the State.

Pinnacle argues that its filing of applications for permits with the State on April 19, 2000, immunized it from the City's zoning change but we see no basis in law or logic for this proposition. While we acknowledge that at times, state law can pre-empt local

---

[6] <u>Compare with</u> <u>State ex rel. Great Lakes Pipe Line Co. v. Hendrickson</u>, 393 S.W.2d 481, 484 (Mo. 1965). In <u>Hendrickson</u>, a public utility company had acquired land in a village for the purpose of installing a pumping station. After having been advised by the village that it had no zoning regulations, the utility had entered into a contract for the construction of the station. After the utility's contractors began work, the village enacted a zoning ordinance that restricted the erection of pumping stations. Before the ordinance was enacted, the utility had spent or committed itself to a total of over $64,000 in addition to the amount that it had paid for the land. <u>Id.</u> at 482-83. The court found that "[a] structure in the course of construction at the time of the enactment of the ordinance is protected as a nonconforming use, but mere preliminary work which is not of a substantial nature does not constitute a nonconforming use." <u>Id.</u> at 484. The court then held that because the utility had completed a portion of the structure and had obligated itself to a great extent of money before the zoning ordinance was passed, the utility had established a nonconforming use of the land for the purpose of a pumping station prior to the enactment of the ordinance and had a vested right thereto. <u>Id.</u>

law, see, e.g., Ind. Code § 36-1-3-5(a) (2005), Pinnacle provides us with no authority that there is state pre-emption here. Local government enjoys wide latitude from the State in land use regulation. Its authority includes "not only all powers granted it by statute, but also all other powers necessary or desirable in the conduct of its affairs." Ind. Dep't of Natural Res. v. Newton County, 802 N.E.2d 430, 432 (Ind. 2004) (quotations and citations omitted). And while here the City has imposed burdens in addition to those of the State for a party seeking to erect billboards in interstate rights-of-way, state law has not been frustrated by the city zoning ordinance. See id at 433. In other words, this is not a case where anything the City has done interferes with State prerogatives. Furthermore, common experience tells us that permits and approvals from different agencies and levels of government are often required for a single project. Compliance with one agency's or level's requirements simply does not constitute compliance with another's.

Most telling in this respect is the fact that regardless of what the City's billboard location regulation was, or even whether it had one, Pinnacle would still have been required to obtain State approval for its project. State approval was in addition to, and not a substitute for, local approval. That being so, Pinnacle cannot use its compliance with State requirements as a substitute for compliance with local requirements.

## Conclusion

Having granted transfer, Indiana Appellate Rule 58(A), we reverse the judgment of the trial court as to its holding that the zoning ordinance was inapplicable to the 10 permits and remand this matter to the trial court with instructions to grant the City's motion for summary judgment. Because we find that the zoning ordinance was applicable, we also reverse the trial court's award to Pinnacle of attorney fees.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

11