**CITY OF NEW HAVEN, Board of Zoning Appeals, Appellant–Respondent,**

v.

**FLYING J., INC., Appellee–Petitioner.**

No. 02A03–0902–CV–74.

Court of Appeals of Indiana.

Aug. 31, 2009.

---

Wayne C. Turner, Gregory A. Neibarger, Shannon D. Landreth, Bingham McHale LLP, Indianapolis, IN, David Van Gilder, Van Gilder & Trzynka, P.C., Fort Wayne, IN, Attorneys for Appellant.

James A. Federoff, Jason M. Kuchmay, Federoff Law Firm, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Flying J., Inc. ("Flying J") filed a petition for writ of certiorari in the Allen Superior Court seeking judicial review of the decision of the Board of Zoning Appeals of the City of New Haven ("the BZA") rejecting Flying J's development plan. The trial court reversed the decision of the BZA. The BZA appeals and presents two issues for our review, which we consolidate and restate as whether the trial court erred in concluding that Flying J had a vested right to develop a travel plaza under an original zoning ordinance and that an amended zoning ordinance was inapplicable.

We affirm.

### Facts and Procedural History

The background facts of this case were set forth by this court in *Flying J., Inc. v. City of New Haven Board of Zoning Appeals*, 855 N.E.2d 1035, 1036–38 (Ind.Ct. App.2006):

> Flying J owns 53.3 acres of land in the northwest quadrant of the I–469/U.S. 30 interchange in New Haven, Indiana ("the Site").

> \* \* \*

> Flying J wanted to develop 17.7 acres of the Site by building a travel plaza, in which it could "offer a wide range of amenities for both the traveling public and the professional driver in one comprehensive facility." In February 2005, Flying J sought a determination from Brian Yoh, the New Haven Planning and Economic Development Director ("the Zoning Director"), as to whether its proposed uses for the travel plaza development would be permitted in the C–1 District. The proposed uses for the travel plaza development included: a convenience store; a country market; a full service, 24–hour restaurant; a fast food court; a service station with gasoline and diesel fuel dispensers for passenger cars, recreational vehicles ("RVs"), and trucks; travelers' rest facilities, including restroom, showers, laundry, TV lounge, and video games; accommodations for business needs, including ATMs, fax capabilities, telephones, computer and internet access, and overnight delivery drop boxes; RV

services, including waste tank disposal and propane refueling; and separate parking for RVs and trucks.

In response, the Zoning Director informed Flying J that some but not all of the proposed uses of the travel plaza were permitted in a C–1 District. Specifically, the Zoning Director determined that the restaurant, convenience store, country market store, food court, business services, service station, and travelers rest facilities were permitted uses in the C–1 District while the "fueling stations for tractor-trailer vehicles, service for RV's, including waste tank disposal facilities and propane at RV islands, and 24[-]hour parking for up to 11 recreational vehicles and 187 trucks at a time" were not permitted uses.

Flying J then appealed the Zoning Director's determination to the BZA. Following a public hearing, the BZA agreed that the fueling stations for trucks, RV services regarding waste tank disposal and propane, and parking for RVs and trucks were not permitted uses and then issued written findings of fact, in which it approved the Zoning Director's determination. In its written opinion, the BZA indicated that the fueling stations for trucks were distinguishable from the permitted use of a service station contained in the C–1 Zoning Ordinance. The BZA also determined that the RV services of waste disposal and propane and parking for RVs and trucks were not accessory uses that would be allowed under the C–1 Zoning Ordinance.

Flying J then filed a petition for writ of certiorari with the trial court and later filed a motion for summary judgment, alleging that, as a matter of law, all of its proposed uses were permitted in a C–1 District. Following a hearing, the trial court issued an order affirming the BZA's decision that the truck fueling stations, RV services, and parking for RVs and trucks were not permitted uses under the C–1 Zoning Ordinance....

\* \* \*

Thus, the trial court denied Flying J's motion for summary judgment and entered summary judgment in favor of the BZA.

On appeal, a panel of this court held that all of the disputed uses were permitted uses under the C–1 zoning. *Id.* at 1039–43. The court therefore reversed the trial court's grant of summary judgment in favor of the BZA and remanded the case to the trial court with instructions to instead enter summary judgment in favor of Flying J. *Id.* at 1043. This court subsequently denied the BZA's petition for rehearing in *Flying J*, and our supreme court denied the BZA's petition for transfer on May 3, 2007, at which time our opinion in *Flying J* was certified.

On remand, the trial court, as instructed, entered a final order in favor of Flying J. The BZA then filed a motion to correct error, explaining that, while the prior litigation was proceeding, the City of New Haven ("the City") had amended its zoning ordinances, restricting the size of service stations permitted in C–1 zoning, and that under this new zoning ordinance, Flying J's proposed travel plaza was no longer permissible under this amended zoning ordinance. Specifically, the permitted uses in C–1 were amended as follows, with the amending language emphasized:

(2) Automobile service, including but not limited to the following:

(a) Service station, but not including major automotive, mechanical, or body repair or refinishing, *and not to exceed, including accessory uses and structures, two (2) acres in size.*

Appellant's App. p. 301. The trial court denied the BZA's motion to correct error.[1]

Although the City provided notice of the amendment of the zoning ordinance by publication, the City did not directly inform Flying J of the change, despite the fact that the City and Flying J were in discussions regarding how to move forward with Flying J's development plan. Indeed, the trial court found that the City "concealed its efforts to adopt the Amended Ordinance from Flying J." *Id.* at 15. The City did not amend its zoning ordinances in any other way that would restrict the size of any other commercial development. The largest existing service station in the City at that time was 1.96 acres in size. Thus, as applied, the amended ordinance affected only Flying J's planned travel plaza.

Unaware of the amended zoning ordinance, Flying J tendered its development plan to the BZA on July 18, 2007. The City's Zoning Director again rejected Flying J's development plan, citing the amended zoning ordinance.[2] Flying J then appealed the Zoning Director's decision to the BZA, and the BZA held a public hearing on the matter on November 28, 2007. At the hearing, Flying J submitted evidence of the costs and expenses it had incurred in connection with the acquisition and development of the land for its planned travel plaza. Specifically, Flying J presented evidence that it had expended a total of $4,169,358.97 thus far. Neither the Zoning Director nor the BZA presented any evidence to contradict Flying J's evidence. Nevertheless, on December 19, 2007, the BZA affirmed the Zoning Director's decision to reject Flying J's development plan.

On January 16, 2008, Flying J filed a petition for a writ of certiorari with the trial court, seeking review of the BZA's decision. The trial court eventually held a hearing on the matter on May 29, 2008. Following the hearing, the BZA submitted as additional authority an opinion of the federal Seventh Circuit Court of Appeals which affirmed the federal District Court's denial of Flying J's equal protection claim it had previously brought against the City.[3] On January 20, 2009, the trial court entered findings of fact and conclusions of law reversing the BZA's decision to affirm the Zoning Director's rejection of Flying J's development plan. The BZA now appeals.

## Standard of Review

The trial court entered specific findings of fact and conclusions of law. As such, we apply a two-tiered standard of review:

> [W]e determine whether the evidence supports the trial court's findings, and we determine whether the findings support the judgment. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any reasonable

1. There is no indication in the record that the BZA appealed this decision.

2. In its development plan, Flying J indicated that it did not intend to develop the remaining portion of the land it owned adjacent to the planned travel plaza and instead marked the undeveloped portion of its land as "Future Development." The Zoning Director also based his rejection on the grounds that Flying J had not submitted a plan for all of its land, citing another zoning ordinance which re-

quired that "[t]he application, submitted on Plan Commission forms, shall be for preliminary approval *of an entire tract* or a final approval for all or a portion of a site previously approved in preliminary form." *Id.* at 17 (emphasis added). The trial court also reversed the BZA on this ground, and the BZA does not directly challenge this portion of the trial court's order on appeal.

3. *Flying J, Inc. v. City of New Haven,* 549 F.3d 538 (7th Cir.2008).

inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.

*Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031 (Ind.2004) (citing *Bussing v. Ind. Dep't of Transp.,* 779 N.E.2d 98, 102 (Ind.Ct.App.2002), *trans. denied* ).

### Discussion and Decision

The heart of the issue currently before us is whether the amended zoning ordinance is applicable to Flying J's planned travel plaza. If so, the planned travel plaza is not in compliance with the amended ordinance, and the BZA cannot be said to have acted improperly in rejecting Flying J's development plan; if not, the BZA did act improperly, and the trial court correctly reversed the BZA's decision.

As the trial court correctly observed, changes in zoning ordinances are subject to any vested property right. *Metro. Dev. Comm'n of Marion County v. Pinnacle Media, LLC,* 836 N.E.2d 422, 424 (Ind.2006) ("*Pinnacle I* "). Generally, a "nonconforming use" may not be terminated by a new zoning enactment. *Id.* at 425 (citing *Jacobs v. Mishawaka Bd. of Zoning Appeals,* 182 Ind.App. 500, 501–02, 395 N.E.2d 834, 836 (1979)). A "nonconforming use" is a "use of property that lawfully existed prior to the enactment of a zoning ordinance that continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions." *Id.* at 425 (citing *Metro. Dev. Comm'n v. Marianos,* 274 Ind. 67, 408 N.E.2d 1267, 1269 (1980)). In such situa-

tions, "the landowner ha[s] a 'vested right' in the use of the property before the use became nonconforming, and because the right [i]s vested, the government c[an] not terminate it without implicating the Due Process or Takings Clauses of the Fifth Amendment of the federal constitution, applicable to the states through the Fourteenth Amendment." *Id.* (footnote omitted).

At issue in *Pinnacle I* was whether a recently-amended zoning ordinance applied to the developer's plan to erect several advertising billboards near interstate highways. In that case, the City of Indianapolis had originally informed the developer that its zoning ordinances did not apply because the ordinances did not cover interstate highway rights-of-way. After the developer had erected two billboards, Indianapolis amended its zoning ordinance to cover interstate highway rights-of-way. When the developer attempted to start erecting the other planned billboards, Indianapolis issued a stop work order, and the developer sued. The trial court granted summary judgment in favor of the developer.

Upon appeal, our supreme court affirmed the long-held principle that zoning ordinances are subject to vested rights. *Pinnacle I,* 836 N.E.2d at 424. But the court rejected a line of cases which held that the mere filing of a building permit was sufficient to establish a vested right. *Pinnacle I,* 836 N.E.2d at 428 (overruling *Knutson v. State ex rel. Seberger,* 239 Ind. 656, 160 N.E.2d 200 (1959)). Instead, the court approved of a line of cases which held that land acquisition, demolition, and site preparation were *not* enough to establish a vested right. *Id.* (citing *Lutz v. New Albany City Plan Comm'n,* 230 Ind. 74, 101 N.E.2d 187 (1951)). Applying this rule to the case before it, the court in *Pinnacle I* noted that no construction of any kind

had proceeded on the billboards as of the date the ordinance change was officially proposed or enacted. *Id.* at 429. Further, the developer did not argue that it had made construction expenditures before the enactment of the zoning ordinance change. *Id.* The court therefore held that the amended zoning ordinance was applicable to Pinnacle. *Id.*

On rehearing, the court issued an opinion which reaffirmed its original opinion that changes in zoning ordinances are subject to any vested property right. *Metropolitan Development Commission of Marion County v. Pinnacle Media, LLC,* 846 N.E.2d 654, 655–56 (Ind.2006) (*"Pinnacle II"*). The court further explained:

> The point is that the focus is on whether or not vested rights exist, not whether some filing has been made with a government agency, a filing that might be purely ministerial and represent no material expenditure of money, time, or effort. *We acknowledge, as perhaps our original opinion should have, that vested rights may well accrue prior to the filing of certain applications.* (We saw no evidence of vested rights having accrued in the facts of this case and indeed it was Pinnacle's position that under Indiana law "mere application for a permit . . . grant[s] an applicant a vested right to have its application construed in accordance with existing law.") It is beyond the scope of this opinion, and unfair to future litigants, to respond to the hypothetical scenarios set forth in the *amici brief,* but we believe our original opinion establishes a basic framework for such analysis in future cases

that will protect vested rights to the full extent the Constitution requires.

*Id.* at 656–57 (citation omitted).

On remand, the developer attempted to amend its complaint against the BZA, which the trial court denied. On appeal to this court, we held that the doctrines of res judicata and the law of the case precluded the developer from amending its complaint on remand. *Pinnacle Media, L.L.C. v. Metro. Dev. Comm'n of Marion County,* 868 N.E.2d 894, 900–01 (Ind.Ct.App.2007), *trans. denied* (*"Pinnacle III"*).[4]

Here, the BZA argues that, because Flying J had not yet begun construction on its travel plaza, Flying J had no vested right to develop the travel plaza pursuant to the original zoning ordinance. The BZA argues that the amended zoning ordinance is therefore applicable and that Flying J's development plan for the travel plaza clearly exceeds the size limitations of the amended zoning ordinance. Flying J argues that it did have a vested right prior to the amendment of the zoning ordinance, that its planned travel plaza is a nonconforming use, and that the amended zoning ordinance does not apply.

If *Pinnacle I* were the only case we considered, we might well agree with the BZA that Flying J had no vested right because it had not yet begun construction on the travel plaza. Indeed, in *Lutz,* which was cited with approval by our supreme court in *Pinnacle I,* the court held that "where no work has commenced [on a planned service station], or where only preliminary work has been done without going ahead with the construction of the proposed building, there can be no vested

4. Specifically, we held that the law of the case doctrine prevented us from considering the developer's argument that Indiana Code section 36-7-4-1109 (2006) should have applied to that case. *Id.* Section 1109 provides that a permit application shall be governed for at least three years by the statutes, ordinances, rules, development standards, and regulations in effect and applicable to the subject property when the application was filed. *See Pinnacle III,* 868 N.E.2d at 900.

rights." *Lutz*, 230 Ind. at 81–82, 101 N.E.2d at 190. Similarly, in *Pinnacle I*, the court emphasized that the developer had yet to begin construction on the billboards. 836 N.E.2d at 429. Here too, Flying J has yet to begin construction.

However, as explained by our supreme court in its opinion on rehearing in *Pinnacle II*, the main issue in *Pinnacle I* was the conflict between the cases following *Lutz* and the cases following *Knutson*, i.e. whether application for a building permit was sufficient to establish vested rights. *Pinnacle II*, 846 N.E.2d at 655. The court further explained that "vested rights may well accrue prior to the filing of certain applications." *Pinnacle II*, 846 N.E.2d at 656. Obviously, construction is unlikely to begin before a developer files an application for a building permit. Thus, *Pinnacle II* implied that vested rights could accrue prior to construction.

This implication was given further force in *Pinnacle III*, wherein we stated, "there is no bright-line rule that construction must have commenced in order to show a vested right." 868 N.E.2d at 900. We also held that the developer "might well have presented evidence other than the permit application to show a vested right." *Id.* In a footnote immediately following this sentence, we observed, "Expenses incurred before a permit application may typically include the costs associated with leases, options, and land purchases, as well as surveying, engineering, site planning, and rezoning." *Id.* at 900 n. 1. We further stated that our supreme court in *Pinnacle II* had "reiterated that the existence of vested rights is fact-dependent." *Pinnacle III*, 868 N.E.2d at 900.

▮ We read the *Pinnacle* cases to mean that, while construction definitely does establish a vested right, mere preliminary work, including filing of a building permit, does not. In situations falling between these two extremes, courts must engage in a fact-sensitive analysis to determine whether vested rights have accrued prior to application for a building permit or construction.

Flying J focuses on the footnote in *Pinnacle III* to show that it has expended millions of dollars in such expenses prior to the commencement of construction. The BZA argues that such expenditures are merely "preliminary work" which was held insufficient to establish a vested right in *Lutz*. We disagree. Flying J presented evidence that it had incurred the following costs with regard to the planned travel plaza:

| | |
|---|---|
| Geotechnical Engineering | $ 10,615.00 |
| Boundary Survey | $ 3,500.00 |
| Topographical Survey | $ 3,200.00 |
| Traffic Engineering | $ 10,600.00 |
| Environmental Engineering | $ 1,527.42 |
| Structural Engineering | $ 5,250.00 |
| Mechanical/Electrical | $ 10,994.37 |
| Civil Engineering | $ 10,600.20 |
| Shipping | $ 41.26 |
| Legal Fees | $ 194,684.01 |
| Travel Expenses | $ 8,635.15 |
| Design Overhead | $ 151,190.56 |
| Purchase Price for Real Estate | $3,758,521.00 |
| **Total** | **$4,169,358.97** |

Appellant's App. p. 19.

The BZA challenges many of these expenditures, especially the real estate purchase price, legal fees, and travel expenses, claiming that such are preliminary expenses inadequate to establish a vested right. But even were we to agree with the BZA's argument regarding these particular expenses, Flying J's other proved expenses, including tens of thousands of dollars on engineering and surveying, constitute more than mere "preliminary"

work or expenses akin to merely applying for a building permit. Rather, these are the sort of expenses we referred to in *Pinnacle III* when we listed expenses that could give rise to a vested right. *See* 868 N.E.2d at 900 n. 1. This is especially so in light of the status of the continuing litigation between the parties when the BZA amended the zoning ordinance at issue.

Since the determination of when such rights vest is a fact-sensitive determination, we necessarily give deference to the trial court's findings. Under the facts and circumstances before us, we cannot say that the trial court erred in concluding that the amendments to the zoning ordinances were subject to Flying J's vested right in the property and that the amended zoning ordinance was not applicable to Flying J's planned travel plaza. Therefore, the trial court also correctly determined that the BZA erred in rejecting Flying J's development plan based on the inapplicable amended zoning ordinance.[5]

Affirmed.

DARDEN, J., and ROBB, J., concur.

---

5. Because we conclude that the amended zoning ordinance was inapplicable to Flying J's development plan, we need not address the BZA's argument that the trial court erred in finding that the BZA failed to provide notice to Flying J regarding the amendment of the ordinance. We similarly need not address the BZA's argument that Flying J could have preserved a right to develop the travel plaza by applying for a permit earlier, thus availing itself of the protections afforded by Indiana Code section 36–7–4–1109 discussed in note 4, *supra*.